## APPEAL OF ROCK SPRING DISTILLING CO.

Docket No. 1370.   Submitted February 25, 1925.   Decided June 30, 1925.

1. In the absence of sufficient proof to establish greater value, the taxpayer is not entitled to capitalization of good will in excess of the amount allowed by the Commissioner.

2. Under the Revenue Act of 1917, the taxpayer is not entitled to an allowance for obsolescence of good will during that part of its fiscal year ended June 30, 1918, that fell within the calendar year ended December 31, 1917.

3. Where the selling price of property acquired prior to March 1, 1913, is less than cost and also less than value on March 1, 1913, the deductible loss for income and profits-taxes purposes, is the difference between selling price and cost or value on March 1, 1913, whichever is lower.

4. Upon the evidence adduced in this appeal, the taxpayer is not entitled to depreciation on buildings and equipment in excess of the amounts allowed by the Commissioner.

*Herbert G. Mayer, Esq.*, for the taxpayer.
*C. H. Curl, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This is an appeal from a determination of the Commissioner of additional tax liability for income and profits taxes for the fiscal years ended June 30, 1918, June 30, 1919, June 30, 1920, and June 30, 1921, in the respective amounts of $33,861.90, $4,177.87, $2,315.84, and $4,781.61, or a total of $45,137.22. The deficiency results from disallowance by the Commissioner of certain amounts which the taxpayer deducted from its gross income during the years involved, (1) for obsolescence of good will, (2) for loss resulting from sale of assets, and (3) for depreciation of tangible property. From a stipulation read into the record, the allegations of the petition admitted by the Commissioner, and oral and documentary evidence offered at the hearing, the Board makes the following

FINDINGS OF FACT.

1. The taxpayer is a Kentucky corporation, organized in 1886 as the successor of a previously existing partnership. Its principal

place of business is at Owensboro, Ky., where it was engaged in the business of manufacturing and selling whisky. During the years involved in this appeal the issued capital stock of the taxpayer consisted of $350,000 par value of common stock and $40,600 par value of 6 per cent preferred stock.

2. Some time between the years 1860 and 1870 two brothers, Sipio Hill and William Hill, established a small distillery at Owensboro, Ky., which they conducted as a partnership until September, 1886, at which date they disposed of their plant and good will to the Rock Spring Distilling Co. From its inception the taxpayer has been a close corporation, and has neither sold nor offered to sell any of its stock. The operating plant was gradually built up from an original value of only a few hundreds of dollars, until at the year 1905 the taxpayer had capital investments in tangible assets in the amount of at least $100,000. In the year 1906 approximately one-half the plant was destroyed by fire. The loss was promptly replaced with brick buildings in place of the wooden structures that had been burned. By the end of the year 1906 the investment in plant and equipment was approximately $152,000.

3. In the year 1906 the taxpayer, desiring to know the actual value of its tangible property, employed the American Appraisal Co., of Milwaukee, Wis., to make an appraisal of its plant and equipment as of May 1st of that year. Subsequently the same company made other appraisals of the taxpayer's tangible property as of August 4, 1911, and December 1, 1913. The latter appraisal included buildings and equipment, but did not include land, stock, supplies, and raw materials on hand, nor goods in process of manufacture. The values determined by the appraisal of December 31, 1913, were as follows: Buildings, $169,735.80; machinery and equipment, $78,792.80; delivery equipment, $1,677.89. This appraisal is based on the depreciated reproduction cost of the inventoried assets. The Commissioner and the taxpayer agree that the fair market value of the plant and equipment on March 1, 1913, was $250,206.59.

4. The net assets and net earnings of the taxpayer for the years 1908 to 1912, inclusive, were as follows:

|  | Net assets. | Net earnings. |
|---|---|---|
| 1908 | $551,248.80 | $76,318.62 |
| 1909 | 604,127.42 | 73,399.00 |
| 1910 | 654,090.96 | 122,994.58 |
| 1911 | 753,049.54 | 145,867.18 |
| 1912 | 876,080.72 | 130,129.37 |

5. On May 27, 1918, the taxpayer sold its plant and equipment at public auction to one of its officers and one of its stockholders for $17,750. The Commissioner does not question the good faith of this transaction, nor of any subsequent transfers of the property.

6. The books and accounts of the taxpayer were conservatively kept and at no time was any attempt made to write up the value of the plant, equipment, or good will in order to make a favorable showing to the public. After the year 1898 no statements were given to banks as a basis of credit, and after the year 1903, except for one or two short-term loans, no money for financing business operations was borrowed from any source.

7. The taxpayer used no regular formulæ in writing off depreciation of its tangible assets. The amounts of depreciation charged off its books and deducted from its income-tax returns for the years 1909 to 1917, inclusive, were as follows: 1909, $6,354.31; 1910, $10,104.39; 1911, nothing; 1912, $11,046.09; 1913, $11,155.53; 1914, $49,039.40; 1915, $7,400.70; 1916, $6,950.65; 1917, $6,000. In computing the taxpayer's deductions for depreciation for invested capital purposes the Commissioner used a composite rate of $6\frac{1}{4}$ per cent, the usual formula for determining depreciation of buildings and equipment used for distillery purposes in the district in which the taxpayer's property is located.

8. The taxpayer owned trade brands of whisky known as " Hill and Hill," " Old Kentucky Colonel," " The J. T. Welch," " The S. I. Monarch," " The Kentucky Climax," "Annapolis Rye," and " Bonharbor Rye," all of which were extensively advertised, well known, and largely used throughout the Middle West, West, and Southwest, and to some extent in the New England States and the Southeast. Approximately 80 per cent of the product of the taxpayer was sold under these well-known trade brands. Due to its conservative accounting practice the taxpayer carried no values of good will or trade brands on its books.

9. The plant and equipment owned by the taxpayer were adapted only to the manufacture, storage, and bottling of whisky and spirits. When it became apparent that the Eighteenth Amendment to the Federal Constitution would be ratified, the taxpayer considered its distillery property of little value, and after the year 1917 voluntarily discontinued the distillation of whisky and spirits, but continued the bottling, storage, and sale of whisky in stock, as permitted by law, for some time thereafter.

### DECISION.

The determination of the Commissioner is approved.

OPINION.

LANSDON: The taxpayer alleges, as errors of the Commissioner upon which he predicates this appeal, four issues as follows: (1) In computing the value of good will as of March 1, 1913; (2) in refusal to allow obsolescence of good will for the period falling in 1917 of the taxpayer's fiscal year ended June 30, 1918; (3) in the computation of the loss on sale of plant in the year ended June 30, 1918; and (4) in the computation of depreciation on the taxpayer's plant and equipment.

The first issue involved in this appeal is the valuation of good will of the taxpayer on March 1, 1913. This is a question of fact. The elements of such value and the rules for its ascertainment differ widely. The taxpayer asserts that the fair market value of its good will on March 1, 1913, was $400,000; the Commissioner contends that it was only $188,654.55. The burden of proof is on the taxpayer. The value of good will may sometimes be arrived at by attributing a fair return to tangible assets invested in the business and capitalizing the actual average net earnings from operations, if any, in excess of the fair return on the tangible assets on a reasonable percentage basis. The number of years to be used over which the earnings should be averaged, the percentage to be attributed to the tangible assets, and the basis of the capitalization of the remaining earnings are questions to be determined from pertinent facts and conditions. *Appeal of Dwight & Lloyd Sintering Co., Inc.*, 1 B. T. A. 179. With this rule in mind it is obvious that the market value of the stock of the taxpayer would not be greater than the average of other taxpayers similarly situated, and, in the absence of competent proof to the contrary, we are convinced that the value of the good will of the taxpayer on March 1, 1913, was not greater than the amount determined by the Commissioner.

The second issue involved is the refusal of the Commissioner to allow obsolescence of good will for the period falling in 1917 of the taxpayer's fiscal year ended June 30, 1918. The taxpayer, since its organization, has kept its books on the basis of a fiscal year ended June 30. It has, therefore, uniformly filed its income-tax returns, under the several Revenue Acts, for 1916, 1918, and 1921, as permitted by the Acts, on such basis. The Revenue Act of 1916 contained no provisions recognizing losses resulting from obsolescence. The Revenue Act of 1918 provides for the deduction of " a reasonable allowance for the exhaustion, wear and tear of property used in trade or business, including a reasonable allowance for obsolescence." For the fiscal year ended June 30, 1918, the Commissioner allowed loss resulting from obsolescence only for that portion of such year

falling in the calendar year 1918. The evidence shows that the earnings of the taxpayer for the fiscal year ended June 30, 1918, were about $220,000. The Board is of the opinion that neither the law nor the evidence supports any claim for obsolescence of good will prior to January 1, 1918.

The third issue which is presented in this appeal is whether the loss sustained by the sale of the plant should be based upon the March 1, 1913, value or upon the original cost, which latter is much less than the March 1, 1913, value. The taxpayer owned a plant which was used for the manufacture and sale of whisky, which, in 1906, when the last improvement and addition were made, cost approximately $152,000.

On March 1, 1913, the agreed value of this property was approximately $250,000, and was sold on May 27, 1918, for $17,750, which was $134,250 less than the cost price and $232,250 less than the March 1, 1913, value. The taxpayer, in its income-tax return, deducted the latter sum as the amount of its loss on sale of property. The Commissioner reduced the amount of the deduction to the actual loss of $134,250. The action of the Commissioner in this regard was correct. *United States* v. *Flannery*, 268 U. S. 98; and *McCaughn* v. *Ludington*, 268 U. S. 106.

The fourth issue involved in this appeal is error alleged in the computation of depreciation on the taxpayer's plant and equipment. From the evidence submitted it appears that the taxpayer did not use a regular method of writing off depreciation. In some years a large amount was written off; in other years much smaller amounts were written off. The revenue agent testified at the hearing that by spreading the depreciation written off over a period of years the average was 6¼ per cent, covering buildings and machinery, and that this was about the average used and allowed to other companies similarly situated in that district. The evidence offered indicates that the depreciation allowed by the Commissioner is fair and equitable, and the action of the Commissioner is sustained.